[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14419
Non-Argument Calendar

_____

D.C. Docket No. 4:17-cv-01840-KOB

PAIGE GIAMALVA MCCULLARS,

Plaintiff - Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 2, 2020)

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Paige McCullars ("McCullars") appeals the district court's order affirming the Administrative Law Judge's (the "ALJ") decision denying her application for temporary disability and disability insurance benefits.  McCullars argues that (1) the ALJ erred in giving only some weight to the opinions of certain consulting physicians, (2) the Appeals Council erred in declining to consider newly submitted evidence because it was not material or chronologically relevant, and (3) the district court failed to conduct a de novo review of McCullars's objections to the magistrate judge's report and recommendation and improperly affirmed the ALJ's decision based on a post hoc rationalization.  For the following reasons, we affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

In January 2015, McCullars filed an application for disability benefits due to depression, chronic urticaria and angioedema (hives and swelling), back and neck deterioration, and temporomandibular joint pain, with an alleged onset date of November 11, 2011.  The Commissioner of Social Security (the "Commissioner") denied the application, and McCullars requested a hearing before an ALJ.

In support of her claim, McCullars submitted several medical records.  Dr. Weily Soong ("Dr. Soong"), an allergist at the Alabama Allergy & Asthma Center ("AAAC"), first treated McCullars in April 2012.  He diagnosed her with "mild rhinitis," "mild" dermatographia, and "very mild" urticaria, and prescribed prednisone and Flonase or Nasonex.  The next month, McCullars was still suffering

2

from hives, and Dr. Soong diagnosed her with chronic urticaria and angioedema triggered by environmental allergies, allergic rhinitis, and chronic sinusitis. In June 2012, McCullars's hives "remain[ed] uncontrolled" despite high-dose antihistamines, and Dr. Soong prescribed monthly injections of Xolair. The Xolair injections appeared to work, and by August, Dr. Soong noted that McCullars "[ha]s had no more hives" and was "[d]oing great on Xolair." However, McCullars's insurance discontinued her Xolair injections, and by January 2013, her condition had worsened.

In Spring 2013, Dr. John Wilborn ("Dr. Wilborn"), an internist, treated McCullars for pelvic pain and referred her for a hysterectomy. McCullars returned to Dr. Wilborn in February 2014 complaining of back pain. McCullars had MRIs conducted, which revealed "mild" disc bulging. In November 2013, McCullars visited Dr. Glenn Wilson ("Dr. Wilson"), an orthopedist, for back pain and numbness in her left hand and fingers. As a result, McCullars had carpal tunnel surgery, and in February 2014, Dr. Wilson noted that her carpal tunnel had resolved.

McCullars returned to Dr. Soong in August 2014, informing him that she experienced a one-year remission, but was once again suffering from hives and wanted to resume Xolair injections. Although Dr. Soong did not observe hives in his physical examination, he prescribed her monthly Xolair injections, and

3

McCullars reported improvement in October 2014.  McCullars also continued to see Dr. Wilborn in Fall 2014.

In October 2015, Dr. Maxcic Sikora ("Dr. Sikora"), an allergist at the AAAC, examined McCullars and noted generalized urticaria and swelling of her hands and feet.  McCullars informed Dr. Sikora that Xolair controlled her symptoms, but her last injection had been in July 2015 due to insurance issues.  McCullars returned to AAAC in August 2016 "to discuss disability."  She stated that after her July 2016 Xolair injection, she had developed edema and hives on her right arm.  She reported two episodes of angioedema per month and a pressure urticaria in her feet when she walked.  However, she also reported that when she received the injections once a month, her hives and swelling were "pretty controlled."  A physical examination showed no hives or skin abnormalities.

Finally, McCullars submitted a letter from Dr. Soong addressed to the Commissioner, dated August 19, 2016, in which he stated that he had been treating McCullars since 2012 and that she had multiple flares from the chronic idiopathic urticaria and angioedema, which "severely impact her life."  The letter also expressed "hope that with continued monthly management," McCullars would "eventually go into remission."

On October 4, 2016, McCullars had a video hearing before the ALJ.  She testified that she had last worked full time in 2007 as a vice president at a bank.

4

After working at the bank for seventeen years, she left in 2007 to stay home with her two children. She was first diagnosed with idiopathic chronic urticaria and angioedema at age fifteen. She was in remission for seventeen years, but relapsed in 2011. She testified that the condition prevented her from doing simple tasks such as talking, walking, and typing. Prolonged sitting or standing would cause angioedemas and hives to form. When she received her monthly injection of Xolair, she would become very sick for five days and then be relatively symptom-free for two weeks. Following the two weeks, the angioedemas and hives would return until her next injection. She further testified that she could do light chores, such as doing laundry, and driving her children to school, but could not do heavier chores, like vacuuming, or driving long distances. She also testified that she could sit or stand for only approximately thirty minutes at a time, and that she could no longer perform her former job at the bank because she could not do repetitive tasks or use her hands without causing an outbreak. When suffering an outbreak, she testified that she was "basically incapacitated."

At the end of the hearing, the ALJ ordered McCullers to undergo a physical examination regarding her carpal tunnel syndrome and a psychological evaluation regarding her OCD. The ALJ informed McCullars that he would make his decision after receiving those reports.

5

On October 22, 2016, McCullars saw Dr. Sathyan Iyer ("Dr. Iyer") for the required physical examination. Dr. Iyer reviewed her prior medical records and current condition. He determined that—although McCullars might have flare-ups that could prevent her from going to work or cause her to leave work early, and her underlying anxiety, depression, and ADHD could impair certain functions—she had no significant physical limitations. Specifically, he found that McCullars could sit, stand, or walk for one-hour periods without interruption, could cumulatively sit for four hours and stand and walk for two hours during an eight-hour workday, and was capable of sorting paper files.

McCullars saw Dr. June Nichols ("Dr. Nichols") for the required psychological examination on November 8, 2016. Dr. Nichols determined that McCullars suffered from moderate depression and chronic anxiety. McCullars's condition did not impair her ability to understand, remember, or carry out instructions, but her ability to respond appropriately to supervision, coworkers, and work pressures would be mildly to moderately impaired.

On December 29, 2016, the ALJ denied McCullars's application. The ALJ found that McCullars had severe physical impairments consisting of chronic idiopathic urticaria with angioedema and hives, allergic rhinitis, degenerative disc disease, history of carpal tunnel syndrome, obsessive compulsive disorder, anxiety, and major depressive disorder. He further found, however, that McCullars's

6

impairments were not severe enough to qualify for disability benefits, and that she had the residual functional capacity to perform light work with regularly scheduled breaks. Specifically, the ALJ noted that, according to McCullars's medical records, her condition was well controlled when she received monthly Xolair injections. Therefore, the ALJ determined, although McCullars would not be capable of performing her past work as a bank vice president, there were jobs available in the national economy that she could perform, and so she did not qualify for disability benefits.

In making this determination, the ALJ afforded "only some weight" to the opinions of Dr. Soong, Dr. Iyer, and Dr. Nichols. The ALJ noted that Dr. Soong's 2016 letter was written significantly outside the relevant time period and that the severity of McCullars's condition seemed "overestimate[d]" in the letter as compared to Dr. Soong's treatment notes within the relevant time period. As to Dr. Iyer and Dr. Nichols, the ALJ similarly afforded their opinions less weight because they were made outside the relevant time period, while noting that they were generally consistent with the medical evidence of record.

McCullars requested that the Appeals Council review the ALJ's decision, arguing that it was not based on substantial evidence. In her appeal, McCullars submitted new medical evidence to the Appeals Council, including a new January 17, 2017, report from Dr. Soong at AAAC. McCullars had reported to Dr. Soong

that she was suffering from debilitating hives, post-traumatic stress disorder, and depression. She also informed Dr. Soong that she was receiving a Xolair injection every two months. A physical examination showed "no rash or lesions" and "[n]o significant abnormalities of mood and affect." Dr. Soong assessed that McCullars's condition was "[p]artially controlled," but noted that McCullars had not been compliant with her Xolair prescription and needed to comply with the once a month regimen.

McCullars also submitted a new Physical Capacities Form from Dr. Wilborn, dated January 20, 2017. Dr. Wilborn stated that McCullars would need to lay down for six hours during an eight-hour workday and would miss twenty-five out of thirty days of work. He further stated that these limitations existed as of her alleged onset date of November 11, 2011. Third, McCullars submitted treatment records from Dr. Adam Alterman ("Dr. Alterman"), who first treated McCullars on January 25, 2016, and diagnosed her with generalized anxiety disorder, major depressive disorder, allergic urticaria, and high blood pressure. One year later, on February 6, 2017, Dr. Alterman completed an assessment, stating that McCullars had limited ability to work and that her condition had been present since the alleged onset date. Finally, McCullars submitted treatment reports from the Northeast Orthopedic Clinic. McCullars was treated at the clinic for hand, foot, and back pain from May 2003 to May 2007, all of which appeared to resolve. She returned to the clinic in 2015 for

8

neck, back, and leg pain caused by a disc herniation after sharing a bed with her daughter.  In 2016, she was treated for pain caused by a car accident.

On September 15, 2017, the Appeals Council denied McCullars's request for review of the ALJ's decision.  The Appeals Council declined to consider the newly submitted evidence because the treatments and assessments did not take place during the relevant time period and it was unlikely that the evidence would have changed the outcome of the ALJ's decision.

McCullars then appealed to the district court, arguing that the Appeals Council should have accepted the new evidence, the ALJ should have given more weight to the opinions of Dr. Iyer and Dr. Nichols, and the ALJ's decision was not supported by substantial evidence.  A magistrate judge issued a report and recommendation rejecting each of McCullar's arguments and recommending that the district court affirm the ALJ's denial of McCullars's application.  The magistrate judge found that the Appeals Council properly rejected the new evidence because it was not chronologically relevant and would not have changed the result.  Similarly, the magistrate judge found that the ALJ's assignment of "some weight" to the opinions of Dr. Iyer and Dr. Nichols was proper because their evaluations took place after the relevant timeperiod.  The magistrate judge further determined that even if the ALJ had given their opinions great weight, it would not have changed the result.

9

Finally, the magistrate judge found that the ALJ's conclusions were supported by substantial evidence.

McCullars objected to the report and recommendation, reiterating her arguments that the Appeals Council failed to consider the new medical evidence and the ALJ improperly rejected the opinions of Dr. Iyer and Dr. Nichols. She also argued that the magistrate judge exceeded his authority by providing post hoc rationalizations for the ALJ's decision. The district court rejected these objections as conclusory and unsupported, adopted the report and recommendation, and affirmed the ALJ's decision. This appeal followed.

## II.    STANDARD OF REVIEW

Our review of a social security case is limited to whether the Commissioner's decision "is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford*, 363 F.3d at 1158); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (noting that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" in reviewing a social security case). "We may not decide

10

the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel*, 631 F.3d at 1178 (alteration in original) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).

We review *de novo* the Appeals Council's refusal to consider new evidence and denial of review. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1321 (11th Cir. 2015) ("[W]hether evidence meets the new, material, and chronologically relevant standard 'is a question of law subject to our *de novo* review.'" (quoting *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003))).

A district court's consideration of a magistrate judge's report and recommendation is reviewed for abuse of discretion. *Stephens v. Tolbert*, 471 F.3d 1173, 1175 (11th Cir. 2006).

## III. ANALYSIS

To qualify for disability insurance, an applicant such as McCullars must show that she was not able to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). A claimant must establish that she became disabled on or before the last date for which she was insured. 42 U.S.C. § 423(a)(1)(A), (c)(1); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). McCullars's date last insured was December 31, 2012. In order to qualify

11

for disability benefits, McCullars was required to show that she was disabled between her alleged onset date of November 11, 2011 and her date last insured of December 31, 2012.

A.    ALJ's Determination that Opinions of Consulting Physicians Were Entitled to "Some Weight"

McCullars argues that the ALJ erred in failing to show cause for rejecting the opinions of the consulting physicians, Dr. Iyer's and Dr. Nichols. We first note, however, that the ALJ did not entirely reject Dr. Iyer and Dr. Nichols's opinions. Rather, the ALJ fully considered the opinions, but gave them only "some weight" because they fell outside the relevant time period.

"[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440). But the opinion of a doctor who examines a claimant on only one occasion, such as a consulting physician, is not entitled to great weight. *See id.* at 1160; *see also*, 20 C.F.R. § 416.927(a)(2), (c)(2) (stating that more weight will be given to medical opinions when there is an "ongoing treatment relationship"). Here, neither Dr. Iyer's nor Dr. Nichols's opinions were entitled to considerable weight, as both physicians examined

12

McCullars only once.  Therefore, the ALJ was not required to give their opinions great weight.[1]  *See Crawford*, 363 F.3d at 1160.

Furthermore, the ALJ properly determined that the consulting physicians' opinions were entitled to only some weight because they fell outside the relevant time period.  In order to qualify for benefits, McCullars was required to show that she was disabled within the relevant time period, *i.e.*, between her alleged onset date of November 11, 2011, and her date last insured of December 31, 2012.  *See Moore*, 405 F.3d at 1211.  Both Dr. Iyer's and Dr. Nichols's examinations took place after McCullars's date last insured.  Dr. Iyer's report addresses McCullars's "current condition" and conditions that "could" arise in the future.  Similarly, Dr. Nichols's report addresses McCullars's "current symptoms."  Therefore, the ALJ's

---

[1] McCullars argues that, in assigning Dr. Iyer's and Dr. Nichols's opinions only some weight, the ALJ substituted his own judgment for those of the medical experts.  While it is true that an ALJ may not substitute his judgment for that of medical experts, *see Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982), the ALJ did not do so here.  McCullars cites cases in which an ALJ rejected expert opinion and substituted his own conclusion based on a "hunch," "intuition," or appearance.  *See, e.g.*, *Marbury v. Sullivan*, 957 F.2d 837, 840–41 (11th Cir. 1992) (Johnson, J., concurring) ("[An ALJ] may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional."); *Graham v. Bowen*, 786 F.2d 1113, 1115 (11th Cir. 1986) (reversing ALJ who made his own assessment that the applicant "appeared moderately handicapped in her gait").  But ALJs are permitted, and in fact required, to use judgment in weighing competing evidence and reaching a final determination as to whether an applicant is disabled.  *See* 20 C.F.R. § 416.927(c) (listing factors ALJ must consider "in deciding the weight [the SSA] will give to any medical opinion"); *id.* § 416.927(d)(1) (specifying that, even when a doctor opines that an applicant is "disabled" or "unable to work," whether an applicant meets the statutory definition of "disabled" is an opinion reserved to the Commissioner).  Here, the ALJ did not rely on his own independent findings; instead, the ALJ considered the medical record, assigned "great weight" to certain medical experts and only "some weight" to other experts (including Dr. Iyer and Dr. Nichols), and stated his reasons for doing so.  This was entirely proper.

13

determination that Dr. Iyer's and Dr. Nichols's opinions shed only limited light on McCullars's condition during the relevant time period—and so were entitled to only some weight—was supported by substantial evidence.[2]

B.    Appeals Council's Rejection of Newly Submitted Evidence

McCullars next argues that the Appeals Council erred in rejecting as not chronologically relevant her new medical evidence from Dr. Soong, Dr. Wilborn, Dr. Alterman, and the Northeast Orthopedic Clinic. Generally, a claimant may present new evidence at each stage of the administrative process, including before the Appeals Council. *Washington v. Soc. Sec. Admin., Comm'r*, 806 F.3d 1317, 1320 (11th Cir. 2015). While the Appeals Council retains discretion to review an ALJ's denial of benefits, *see id.* at 1320, the Appeals Council must consider evidence submitted after the ALJ's decision if the evidence is new, material and chronologically relevant. *See* 20 C.F.R. § 404.970(a)(5); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007). Thus, "when the Appeals Council erroneously refuses to consider evidence, it commits legal error and remand is appropriate." *Washington*, 806 F.3d at 1321.

---

[2] Moreover, it is unlikely that the ALJ's decision to assign only some weight to Dr. Iyer and Dr. Nichols's opinions had a material impact on McCullars's application. As the ALJ noted, their opinions were generally in line with those of other medical experts that the ALJ did assign great weight.

14

New evidence is material if it is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (quoting *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987)).  New evidence is chronologically relevant if it "relates to the period on or before the date of the [ALJ] hearing decision."  20 C.F.R. § 404.970(b); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (noting that the Appeals Council shall "evaluate the entire record including the new and material evidence submitted to it if it relates to the period on or before the date of the [ALJ] hearing decision." (quoting 20 C.F.R. §§ 404.970(b), 416.1470(b))).  Merely acknowledging that the claimant submitted new evidence is not sufficient; the Appeals Council must "adequately evaluate it." *Epps v. Harris*, 624 F.2d 1267, 1273 (5th Cir. 1980).[3]  But the Appeals Council is not required "to provide a detailed discussion of a claimant's new evidence when denying a request for review." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014).

Here, in denying McCullars's request for review, the Appeals Council found that the treatment records from Northeast Orthopedic Clinic did "not show a reasonable probability that [they] would change the outcome of the decision,"

---

[3] In *Bonner v. City of Prichard*, the Eleventh Circuit adopted all Fifth Circuit decisions issued before October 1, 1981 as binding precedent.  661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

meaning that they were not material. The Appeals Council also found that the records from Dr. Soong, Dr. Wilborn, and Dr. Alterman did "not relate to the period at issue," meaning that they were not chronologically relevant.

In *Washington*, this Court held that the Appeals Council erred in failing to consider new evidence from a licensed psychologist who "examined, but did not treat," the applicant and opined that it was "highly unlikely" that the applicant would "be able to maintain any type of job." 806 F.3d at 1319, 1322. First, we found the evidence to be material because it established that the applicant experienced hallucinations and mood swings and had significant cognitive defects. *Id.* at 1321. Furthermore, because the new evidence was consistent with one medical evaluation considered by the ALJ, but inconsistent with another, there was a "reasonable probability" that it would shift the balance of credibility and "change the administrative results." *Id.* at 1322. Second, although the examination took place after the ALJ's decision, we found it to be chronologically relevant because the applicant described the symptoms he experienced during the relevant time period to the psychologist, the psychologist reviewed the applicant's treatment records from the relevant time period, and the psychologist's opinions "relate[d] back to the period before the ALJ's decision." *Id.*

In *Hargress v. Social Security Administration*, however, we noted that *Washington* "limit[ed] its holding to 'the specific circumstances of th[e] case.'" 883

16

F.3d 1302, 1309 (11th Cir. 2018) (quoting *Washington*, 806 F.3d at 1323). In *Hargress*, we affirmed the Appeals Council's decision that because "the new records were 'about a later time' than the ALJ's . . . hearing decision . . . . they were not chronologically relevant." *Id.* Even though the doctor "checked a box that indicated that [the applicant's] limitations dated back to" the relevant time period, the records did not indicate that the doctor "evaluated [the applicant's] past medical records when forming that opinion," and we therefore found that it "did not relate to the period on or before the date of the ALJ's hearing decision." *Id.* at 1310. We further found that the newly submitted evidence was immaterial because it "contradicted" the same doctor's "other records," which were from the relevant time period and indicated less severe limitations, and "was inconsistent" with other medical records from the relevant time period submitted to the ALJ. *Id.*

We agree with the Appeals Council's determination that McCullars's new evidence was either immaterial or not chronologically relevant. First, the treatment records from Northeast Orthopedic Clinic reflect consistent pain from 2005 to 2007—before McCullars's alleged onset date of November 11, 2011—and then a gap in treatment until 2015 and 2016—after her date last insured of December 31, 2012. Because the 2005–2007 treatment was before McCullars's alleged onset date, it is immaterial to the question of whether McCullars developed a disability between November 11, 2011, and December 31, 2012. The 2015–2016 treatments are

17

similarly immaterial because they took place after McCullars's date last insured and reflect treatment for acute injuries suffered from sharing a bed with her daughter and a car accident, and therefore do not indicate an ongoing disability.

Second, the treatment records from Dr. Wilborn and Dr. Alterman were not chronologically relevant. Dr. Wilborn treated McCullars in 2013 and 2014, and those medical records were included in the ALJ hearing record. Both the 2013–2014 treatment records and the 2017 Physical Capacities Form completed by Dr. Wilborn were prepared after McCullars's date last insured of December 31, 2012. On the 2017 Physical Capacities form, Dr. Wilborn checked "yes" in response to whether McCullars's physical limitations dated back to November 11, 2011, but left the question blank as to her mental limitations. Additionally, there is no indication in the record that Dr. Wilborn examined McCullars's medical history prior to her date last insured of December 31, 2012. Similarly, Dr. Alterman treated McCullars in 2016 and 2017 and filled out a Clinical Assessment of Pain on February 6, 2017. In the 2017 assessment, Dr. Alterman checked a box indicating that McCullars's limitations dated back to her alleged onset date of November 11, 2011, but the records do not indicate that Dr. Alterman reviewed McCullars's medical history during the relevant time period. Therefore, the Appeals Council properly determined that these records were not chronologically relevant. *See Hargress*, 883 F.3d at 1310.

18

Unlike the Northeast Orthopedic Clinic, Dr. Wilborn, and Dr. Alterman, Dr. Soong did treat McCullars during the relevant time period.  However, the new evidence submitted to the Appeals Council from Dr. Soong was a treatment record and Physical Capacities Form from January 2017, well after McCullars's date last insured.  Even if this new evidence were chronologically relevant, we find that it was not material.  Like the new evidence in *Hargress*, the new records from Dr. Soong contradict his earlier evaluations from the relevant time period and are inconsistent with other contemporaneous medical records.  Dr. Soong's 2017 evaluation indicates a more severe condition than his earlier treatment records, which stated that McCullars's condition was "very mild" and "slight."  Moreover, even in 2017, Dr. Soong stated that McCullars's condition would be controlled if she complied with her monthly Xolair regimen as prescribed.  Therefore, because the new evidence was not material, there was no reasonable possibility that the new evidence would change the administrative result, and the Appeals Council did not err in rejecting it.

C.     District Court's Adoption of Magistrate Judge's Report and Recommendation

Finally, McCullars argues that the district court erred in not reviewing the report and recommendation *de novo*.  In her objection to the Report and Recommendation, McCullars argued that the magistrate judge erroneously engaged in post hoc rationalizations for the ALJ's decision.  Generally, a district court must

19

make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. *See* 28 U.S.C. § 636(b)(1). But where a litigant fails to offer specific objections to a magistrate judge's factual findings, there is no requirement for the district court to conduct a *de novo* review of those findings. *See Garvey v. Vaughn*, 993 F.2d 776, 779 & n.9 (11th Cir. 1993. "Frivolous, conclusive, or general objections need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). An objection must specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. *See United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with.").

We find that the district court did not abuse its discretion in its assessment that McCullars's objections to the report and recommendation were insufficient to mandate *de novo* review. McCullars made conclusory objections, relying on long block quotes unaccompanied by legal analysis. Even on appeal, McCullars has merely asserted that the magistrate judge engaged in post hoc rationalization without providing a single example. *See Black v. Soc. Sec. Admin., Comm'r*, 762 F. App'x 759, 769 (11th Cir. 2019) (affirming district court when appellant made "conclusory statements that the district court relied on post hoc rationalizations" because "[a]n

20

appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014))). A review of the report and recommendation shows that the magistrate judge tied his conclusions back to those of the ALJ and Appeals Council in an appropriate manner.

## IV.    CONCLUSION

Because the ALJ did not err in assigning only some weight to the opinions of the consulting physicians and the Appeals Council's rejection of newly submitted evidence was proper, we find the district court did not abuse its discretion in adopting the report and recommendation.  Accordingly, we affirm the district court's order.

**AFFIRMED.**