**Leroy FREEMAN, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 81–5276.**

United States Court of Appeals, Eleventh Circuit.

July 29, 1982.

Williams & Milton, Morris W. Milton, St. Petersburg, Fla., for plaintiff-appellant.

Stephen M. Crawford, Asst. U. S. Atty., Tampa, Fla., for defendant-appellee.

Before WISDOM [*], RONEY and HATCHETT, Circuit Judges.

PER CURIAM:

Leroy Freeman appeals the district court's order affirming the decision of the Secretary of Health and Human Services denying Freeman's claim for social security disability insurance benefits.[**] Freeman contends the district court erred in finding that the Secretary's decision was (1) supported by substantial evidence, and that (2) the Secretary met his burden by showing that Freeman is able to perform substantial gainful employment that exists in the national economy. Because we agree with the contentions that the Secretary's decision was not supported by substantial evidence and that the Secretary did not meet his burden in establishing that Freeman was capable of performing substantial gainful employment, we accordingly reverse and remand the decision of the district court.

## I. BACKGROUND

In August, 1976, Leroy Freeman, 49, was a custodian at Boca Caega High School in the Pinellas County (Florida) School District when he sustained a back injury on the job. In September, 1976, Freeman underwent spinal surgery to remove certain vertebrae after conservative treatment failed to relieve the back pain in his left hip and lower legs. On release from the hospital, his physician advised Freeman to curtail prolonged sitting and otherwise limit his activity.

When Freeman was again hospitalized in January, 1977, for a benign renal cyst, doctors observed that he continued to suffer from lower back pain. Freeman's physician thus recommended that he continue to consult a neuro-surgeon.

Freeman filed his disability claim on January 17, 1977, alleging disability due to his back injury and the subsequent surgery on the discs. On petition for reconsideration at the January, 1978, hearing before the administrative law judge (ALJ), Freeman, represented by counsel, was one of three witnesses to appear. Two vocational experts testified, and various medical and vocational reports on Freeman's condition were included in the record. In rejecting Freeman's claim, the ALJ determined that Freeman was unable to perform his prior work as a custodian, but was able to perform other substantial gainful work within the meaning of the act. Upon request, the Appeals Council reviewed and approved the ALJ's decision, thus rendering the ALJ's decision the final decision of the Secretary.

Freeman appealed the Secretary's decision in the district court pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g). On referral, a magistrate found the Secretary's decision not supported by substantial evidence and recommended reversal. The district court rejected the magistrate's report and recommendation and affirmed the Secretary's decision, finding it supported by substantial evidence.

---

[*] Honorable John Minor Wisdom, U. S. Circuit Judge for the Fifth Circuit, sitting by designation.

[**] Freeman appeals pursuant to section 205(g) of the Social Security Act, 42 U.S.C.A. § 405(g) (West Supp. 1982)

We must determine whether the district court erred in holding that the Secretary's decision was supported by substantial evidence.

## CONTENTIONS OF THE PARTIES

On appeal, Freeman contends that the ALJ ignored the evidence and relied solely on his brief observations of the claimant in making his decision. Freeman argues that the ALJ is not a medical expert, and should not be allowed to substitute his layman's assessment of the degree of pain and suffering for that of the medical experts who presented competent evidence. Freeman also argues that the ALJ's decision must be reversed because it does not meet the four part test of disability set out in *DePaepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972). Freeman also asserts that the ALJ submitted improper hypotheticals to the vocational experts and, as a result of a faulty predicate, arrived at the erroneous conclusion that Freeman was capable of gainful employment in the economy.

On the other hand, the Secretary contends that the ALJ properly applied the four part test from *DePaepe*, properly performed his function in evaluating the evidence including his observations of the claimant, and that the decision is properly supported by substantial evidence. The Secretary argues that although Freeman met his burden in establishing that he could no longer perform his former employment, the ALJ presented proper hypotheticals to vocational experts whose testimony established the availability of substantial gainful employment in the market.

## DISCUSSION

Initially, we note that the ultimate burden of proving disability is on the claimant. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981). The claimant must establish a prima facie case by demonstrating that he can no longer perform his former employment. *DePaepe v. Richardson*, 464 F.2d 92, 100 (5th Cir. 1972). The burden then shifts to the Secretary to establish that the claimant can perform other substantial gainful employment. 464 F.2d at 100.

It is undisputed that Freeman cannot perform his former employment either in construction or as a custodian. The controlling issue then is whether the ALJ properly determined that Freeman was capable of performing other gainful employment within the meaning of the Social Security Act. The primary evidence on this point is the testimony of two vocational experts: Gerald Geiger, who appeared for the claimant; and Hal Heitler, who was called by the ALJ.

## THE GEIGER TESTIMONY

Geiger testified that Freeman was unable to return to his former employment. Based on Geiger's examination of Freeman and on Freeman's disability, his past work history, and his lack of transferable skills, Geiger concluded that he was disabled, and "unable to perform work in the competitive market." Geiger testified that tests he administered were in "perfect alignment" with tests conducted by state vocational rehabilitation workers. Freeman "fell below any acceptable occupational pattern" on the Cooter Occupational Interest Test. On the General Aptitude Test Battery, which tests learning ability, Freeman scored a fifty-five, compared to a national average of 100. Geiger testified that Freeman lacked or possessed minimal learning ability.

The ALJ then propounded a hypothetical question requiring Geiger to assume that Freeman could operate a motor vehicle for fifteen to thirty minutes; could stand for ten to thirty minutes; could sit for ten to thirty minutes; could work an entire normal workday alternating between standing and sitting; could climb up and down stairs once per hour; could lift ten to twenty pounds; could occasionally bend; could walk three to five blocks, once or twice an hour, carrying up to ten pounds; possessed normal motor dexterity of hands and upper extremities; and suffered some discomfort in pursuing these activities, but not to a disabling degree. In reply to this hypothetical question, Geiger stated that Freeman could perform the jobs of messenger or

security guard. On cross examination, Geiger was asked by Freeman's counsel to again consider the facts of the ALJ's hypothetical question, but to additionally consider Freeman's (1) scores on the occupational tests, (2) fourth grade education, and (3) I.Q. of approximately sixty-two. Geiger responded that Freeman could not be employed as a messenger or a security guard.

## HEITLER TESTIMONY

Heitler testified that Freeman could not perform his prior work. In responding to the same hypothetical, Heitler stated that Freeman could work as a hand packer of lenses. The ALJ, however, specifically instructed Heitler to disregard Freeman's test scores. Heitler testified that if Freeman could sit or stand as he chose, he could perform no available jobs. If, however, Freeman was able to sit seventy percent of the time, then he could work as an electronic assembler or caller at an airport or bus station. Heitler disregarded both the test scores and Freeman's educational level in reaching these conclusions.

When questioned about the test results, Heitler said he had no reason to believe the test scores were not accurate. Heitler observed that the I.Q. score and the general aptitude score correlated, and that Freeman was of low intelligence. On cross examination, Heitler admitted that Freeman apparently could not read messages well enough to be a caller. Heitler also admitted that he was unaware of the educational requirement for a caller at an airport or a bus station.

Documentary evidence submitted to the ALJ included an evaluation by Goodwill Suncoast based on the diagnosis of its medical expert and entitled "Work Evaluation— Final Summary" issued October 31, 1977. This report concluded that due to the severity of his physical problems, Freeman was not amenable to either training or employment.

*DePaepe* requires consideration of (1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and others; and (4) the claimants' age, education, and work history. *DePaepe v. Richardson,* 462 F.2d at 94.

The hypothetical propounded by the ALJ ignored a key element of this four part test by instructing the vocational experts to ignore the test results. They thus failed to consider Freeman's mental capacity or educational background.

■ Furthermore, the ALJ based his alternative employment judgment on the testimony of the vocational experts' in response to the hypotheticals which consistently ignored Freeman's education and mental capacity. In *DePaepe,* we required that the four factors be considered together, each with the other, and forbade considerations predicated on less than a full review of all the factors. 464 F.2d at 94. By ignoring Freeman's educational ability, the ALJ thus violated the proper analysis mandated by *DePaepe.* We therefore conclude that the Secretary erred in finding that Freeman is capable of performing alternative gainful employment. The Secretary's decision is not supported by substantial evidence—i.e., relevant evidence which a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Our decision finds support in regulations promulgated by the Secretary but not in effect at the time of Freeman's hearing. *See* 20 C.F.R. § 201.00 (1981).

Section 201.09 warrants classifying the claimant as disabled where (1) his maximum work capacity is limited to sedentary work, (2) he is closely approaching advanced age, (3) his education is limited, and (4) his employment history is confined to unskilled work.

Particularly instructive is Example 2 at 20 C.F.R. § 201.00(h):

An illiterate 41 year old individual with mild mental retardation (IQ of 78) is restricted to unskilled sedentary work and cannot perform vocationally relevant past work, which had consisted of unskilled

agricultural field work; his or her particular characteristics do not specifically meet any of the rules in Appendix 2, because this individual cannot perform the full range of work defined as sedentary. In light of the adverse factors which further narrow the range of sedentary work for which this individual is qualified, a finding of disabled is appropriate.

Freeman, an unskilled laborer who was age forty-nine at the time of his injury and is now in his mid-fifties, possesses a fourth grade education, can perform only limited sedentary work (if at all) and has an IQ of 62. Whether his classification is judged under section 201.09, or section 200.00(h), the outcome is disability.

█ Further, we are convinced that the ALJ improperly substituted his judgment of the claimant's condition for that of the medical and vocational experts. The record indicates that the ALJ relied on the appearance of the claimant at the time of the hearing. In his decision the ALJ observed:

> Aside from a suggestion of some uneasiness, his (Freeman's) outward appearance remained essentially the same throughout the hearing. He exhibited no significant observable physical signs which would be related to constant pain, and his ability to get about on a regular basis and otherwise function physically appeared generally unimpeded. He was closely observed throughout the hearing. There was no evidence of frequent and regular usage of strong medication to alleviate pain, and he moved about easily during the hearing.... The Administrative Law Judge believes the claimant has been less than candid during the hearing, has exaggerated his symptoms, and it is noted that when he left the hearing room, he literally sprang up from his chair very easily, showing no signs of pain.

This approach is erroneous in several respects. First, it is well established that "pain unaccompanied by any objectively observable symptoms may be so real and so intense as to be disabling so as to support a claim for disability benefits." *Tyler v. Wein-*

*berger,* 409 F.Supp. 776 (E.D.Va.1976), (citing *Brandon v. Gardner,* 377 F.2d 488 (4th Cir. 1967)). The ALJ's decision improperly suggests that unless the pain is visible to the ALJ at the hearing, it is proper to deny the claim.

Second, the ALJ engaged in what has been condemned as "sit and squirm" jurisprudence. In this approach, an ALJ who is not a medical expert will subjectively arrive at an index of traits which he expects the claimant to manifest at the hearing. If the claimant falls short of the index, the claim is denied. As the court observed in *Tyler,* this approach

> will not only result in unreliable conclusions when observing claimants with honest intentions, but may encourage claimants to manufacture convincing observable manifestations of pain or, worse yet, discourage them from exercising the right to appear before an Administrative Law Judge for fear that they may not appear to the unexpert eye to be as bad as they feel.

409 F.Supp. at 789.

Although it could be argued that this is a case in which the ALJ merely attempted to match the observable symptoms against the testimony, we feel such an approach would be unacceptable in the instant case. In this case, the core of the ALJ's assessment is a medical one, i.e., "he exhibited no significant observable physical signs which could be related to constant pain . . . ."

## CONCLUSION

Because we find that (1) the Secretary's decision is not supported by substantial evidence, and (2) the Secretary did not meet his burden of proof in showing that Freeman is able to perform substantial gainful employment that exists in the national economy, the decision of the district court is reversed and remanded.

**REVERSED AND REMANDED.**