Jerald CRUMPTON, Plaintiff,

v.

Donna SHALALA, Secretary of Health and Human Services, Defendant.

No. CV–93–H–2671–S.

United States District Court,
N.D. Alabama,
Southern Division.

Oct. 4, 1994.

Darryl W. Hunt, Clark & James, Birmingham, AL, for plaintiff.

Caryl Privett, U.S. Atty., Linda Sullivan Trippe, Claude Harris, U.S. Attorney's Office, Birmingham, AL, for defendant.

## MEMORANDUM OF DECISION

HANCOCK, District Judge.

Plaintiff Jerald Crumpton brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Secretary of Health and Human Services ("Secretary") terminating his disability and disability insurance benefits in October 1991.

Plaintiff filed his application for disability insurance benefits on September 6, 1988, alleging a disability onset date of April 20, 1988. On September 26, 1988, plaintiff was awarded a period of disability and disability insurance benefits commencing April 20, 1988. On July 19, 1991, it was determined that plaintiff no longer suffered from an impairment or combination of impairments listed in 20 C.F.R. § 404 Subpart P, App. 1, and that despite the effects of his physical impairments, he was able to perform sustained work activity. Plaintiff's disability was determined to have ended in August 1991 with benefits ending in October 1991. This con-

clusion was upheld at the reconsideration level, and plaintiff requested and received a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on August 19, 1992 in Gadsden, Alabama. In his decision, the ALJ determined that plaintiff was no longer disabled within the meaning of the Social Security Act and, thus, ineligible for continuation of disability and disability insurance benefits. (Tr. 24). After the Appeals Council denied plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Secretary, and therefore a proper subject of this court's review.

■ The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982), and whether the correct legal standards were applied. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir.1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Secretary's findings are conclusive if supported by "substantial evidence." *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Secretary, instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

■ Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Secretary's factual findings must be affirmed even if the evidence preponderates against the Secretary's findings. *Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701. However, for the reasons set forth below, the court affirms the ALJ's decision denying plaintiff benefits.

At the time of the hearing in question, plaintiff was thirty-nine years old, had a tenth grade education, and had previously worked as a truck driver. (Tr. 232–234). Plaintiff stated that he suffers swelling, burning, popping, and constant pain in his right knee from a motorcycle accident and various surgical procedures to repair the knee after the accident. (Tr. 235–36). According to plaintiff, due to these injuries he has been unable to engage in substantial gainful activity since 1986. (Tr. 234).

At the August 19, 1992 hearing, Plaintiff testified that he experiences constant pain and swelling in his right leg from his knee to his ankle. (Tr. 236, 242, 244). He stated that when he stands on his leg, it hurts, burns, pops and his thighs come out of joint. (Tr. 235). On a scale from one to ten, plaintiff ranked his pain as a seven or an eight on an average day. (Tr. 236). Plaintiff stated that he takes Tylenol for the pain and cannot take any other medication because of the adverse effects on his stomach. (Tr. 237). The pain is somewhat relieved when the plaintiff lies down with his leg elevated. (Tr. 237). Plaintiff testified that his hips hurt and that he also experiences pain in his left leg because, due to the injury to his right knee, his left leg must support all of his weight. (Tr. 237, 246). Plaintiff appeared at the hearing with a cane and stated that he uses a cane for balance and has done so ever since getting off of crutches after his motorcycle accident. (Tr. 237).

When asked what he does during a typical day plaintiff answered that he wakes up around nine or ten o'clock in the morning, goes downstairs to have some coffee, and then shortly returns to bed to watch television. When asked if he had trouble caring for himself, plaintiff stated that his girlfriend has to help him in and out of the shower. (Tr. 246). Plaintiff testified that he has difficulty sleeping and does not usually go to bed until midnight. Plaintiff did, however, state that part of his sleeplessness could be from having to lie in bed all day with his leg elevated. (Tr. 239). Plaintiff testified that he occasionally goes to the store with his

girlfriend, (Tr. 240), and plaintiff does drive two to three times a week to a friends house. (Tr. 242).

Plaintiff stated that he can walk a distance of only one block at a time; that he can stand for a period of ten to fifteen minutes; and that he can sit for up to one hour with his leg elevated. (Tr. 238–239, 244). At the time of the hearing plaintiff was taking no medication except for the above mentioned Tylenol, and had last been treated by a physician in May 1992. (Tr. 170–71). Plaintiff testified that every time he has been to a doctor, they have been unable to help his pain. (Tr. 243).

The records submitted reveal the following medical evidence: Plaintiff was injured in a motorcycle accident on April 20, 1988 in which he suffered a severe comminuted and open fracture of the right tibial plateau which required an open reduction and internal fixation with an iliac crest bone graft. (Tr. 113). Plaintiff was seen again at Cooper Green Hospital in July 1988 for osteomyelitis of the right tibia with cultures showing enterobacter, staph aureus, and enterococcus, (Tr. 127), and underwent surgery for irrigation and debridement of necrotic bone right proximal tibia and dressing change. (Tr. 131). In February 1989, plaintiff was admitted to University Hospital in Birmingham for right lower extremity cellulitis. The records reveal that plaintiff responded dramatically to antibiotic treatment and was released after six days of treatment. Patient was instructed to return to Cooper Green Orthopedic Clinic for his ongoing chronic lower extremity infection. (Tr. 205–206). The records of Cooper Green Hospital indicate that plaintiff was seen in the orthopedic or medical clinic five times from February 1989 to February 1990. (Tr. 141–46). On the fifth visit on February 22, 1990, it was noted that plaintiff had fallen and subsequently experienced swelling and pain that was improved by the time of the visit. An x-ray revealed that the hardware in his leg was "o.k.". However, it was noted that there was some pain and instability in the right leg. (Tr. 141). The evidence reveals that plaintiff was not seen again until October 3, 1990, and the medical records of University Hospital reveal that

there was no evidence of osteomyelitis at that time. (Tr. 169). Plaintiff was seen by Dr. Carter Slappy on May 13, 1991 for a follow up examination, and Dr. Slappy noted that plaintiff was doing fairly well to date though still experiencing pain in his right knee. There was no sign of infection, but Dr. Slappy noted that plaintiff was afebrile, with gross deformity about the right knee with numerous incisions, scars and muscle flaps. Plaintiff was diagnosed with post traumatic arthritis of the right knee, but was not a candidate for total knee arthroplasty and was functioning "too well" for a fusion. (Tr. 171).

On January 2, 1992, plaintiff was referred at the request of his attorney, to Dr. Charles Breaux for a consultative examination. Dr. Breaux diagnosed plaintiff with morbid obesity (118 pounds greater than his ideal weight), degenerative joint disease of the right knee, decreased range of motion of the right knee (due to this, Dr. Breaux noted that plaintiff is unable to squat), decreased strength of the right knee, and arthralgia of both ankles. Dr. Breaux noted that it was his opinion that plaintiff was incapable of performing meaningful work at the date of the examination. (Tr. 173–74). Dr. Breaux performed a physical capacities examination and noted that plaintiff would be able to lift ten pounds occasionally or less frequently; that he would be able to sit for two hours and stand and walk for zero hours. A clinical assessment of pain was also performed and it was noted that pain was present and found to be irretractably virtually incapacitating to this individual. (Tr. 175–76).

On March 31, 1992, plaintiff was admitted to Blount Memorial Hospital for a cholecystectomy. The operation was performed without complications, and the plaintiff was discharged within five days. (Tr. 194).

Medical records of Blount Memorial Hospital reveal that plaintiff was seen again on May 11, 1993 complaining that he heard something "pop" in his knee. An x-ray revealed no acute fracture or dislocation radiographically apparent. The examining physical did note marked swelling. (Tr. 199–200).

Finally, at the request of the ALJ, plaintiff was referred to Dr. David Gordon for a consultative examination. Dr. Gordon's im-

pressions were that plaintiff had suffered a severely comminuted open right tibial plateau fracture with subsequent osteomyelitis involving the right knee. Dr. Gordon also completed a physical capacities evaluation where it was noted that plaintiff could sit for four hours, stand for two hours, and walk for one hour; plaintiff could lift up to ten pounds occasionally and could carry up to five pounds occasionally; plaintiff would not be able to use his right foot or both feet for repetitive pushing and pulling movements; plaintiff would be restricted in squatting, crawling, and climbing; and that plaintiff would have mild restrictions on unprotected heights, being around moving machinery, and driving automotive equipment. (Tr. 218–220).

A vocational expert, Dr. David Head, also testified at the August 19, 1992 hearing in front of the ALJ. Dr. Head classified plaintiff's past work as a truck driver as medium to heavy in exertional requirements and semi-skilled in nature with some skills transferrable to light. (Tr. 248–49). Dr. Head concluded, based upon the medical evidence submitted, that plaintiff could not return to his past relevant work. However, based upon plaintiff's age, education, past experience, and his limitations of no repetitive climbing, no abrupt temperature changes, no repetitive bilateral foot control movements, moderate pain, and no unrestricted heights, Dr. Head concluded that there were a significant number of jobs in the national economy in the sedentary level that plaintiff could perform. (Tr. 251). Dr. Head stated that examples of such jobs were security guard, non-complex clerical jobs, cashier, and companion sitter, and that 3,500 of such jobs existed in north, central Alabama.

■ Determination of disability under the Social Security Act requires a five step analysis. See 20 C.F.R. § 404.1 et. seq. First, the Secretary determines whether the claimant is working. Second, the Secretary determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Secretary determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations.

Fourth, the Secretary determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work. The claimant's residual functional capacity is what the claimant can do despite his impairment. Finally, the Secretary determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making this final determination, the Secretary will use the Medical–Vocational guidelines in Appendix 2 of Part 404 of the regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix. If the Secretary finds that the claimant is disabled or not disabled at any step in this procedure, the Secretary will not review the claim any further.

The court recognizes that "the ultimate burden of proving disability is on the claimant" ... and that the "claimant must establish a prima facie case by demonstrating that he can no longer perform his former employment." Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir.1982) (other citations omitted). Once plaintiff shows that he can no longer perform his past employment, "the burden then shifts to the Secretary to establish that the claimant can perform other substantial gainful employment." Id.

■ The ALJ noted that plaintiff was found to be disabled within the meaning of the Social Security Act beginning April 20, 1988, and that he has not engaged in substantial gainful activity since that date. (Tr. 23). The ALJ found that, according to the medical records, plaintiff suffers from severe right lower extremity impairment, but since August 1, 1991 has not had an impairment or combination of impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

The ALJ did find, however, that plaintiff is unable to perform his past relevant work as a truck driver and toe machine operator. Nevertheless, based upon plaintiff's age, 38 which is classified as a younger individual; education, tenth grade; and past work experience, plaintiff has the residual functional capacity for a range of sedentary work which would allow him to experience moderate pain

and would not require repetitive climbing, abrupt temperature changes, repetitive bilateral foot control movements, or work around unrestrictive heights. (Tr. 23). The ALJ noted that although plaintiffs limitations do not allow him to perform the full range of sedentary work, there were a significant number of jobs in the national economy which plaintiff could perform, and therefore, the ALJ determined that plaintiff's disability ceased on August 1, 1991. (Tr. 24).

■ Plaintiff contends that the ALJ erred in disregarding the consultative examinations of Doctors Breaux and Head. The ALJ afforded no deference to these examinations because there was no indication in the record as to the plaintiff's restrictions in his ability to lift, and the infrequency with which the plaintiff has sought treatment does not support either examiners report. The ALJ concluded that it was reasonable to assume that conclusions reached by both doctors were partly based on subjective complaints of pain by the plaintiff that are not supported by the record as a whole. The stated law in the Eleventh Circuit is that a consultative examination is not to be given greater weight than a treating physician. *Hillsman v. Bowen,* 804 F.2d 1179, 1181 (11th Cir.1986). However, plaintiff argues that the ALJ cannot simply ignore x-ray and medical evidence presented by consultative examinations. Counsel for plaintiff cites *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir.1987) for the rule that the ALJ is required to state with particularity the weight he gave the different medical opinions and the reasons therefore. *Id.* at 279. The court is aware of this rule, but is satisfied that the ALJ has given sufficient reasons for his discounting the examinations of the two consulting physicians. (*See* Tr. 19–20). Further, in *Sharfarz,* the ALJ had disregarded the opinions of treating physicians in favor of the opinions of two consultative experts. The court stated, "The opinions of non-examining, reviewing physicians, such as those of Drs. Thomas and Register, when contrary to those of examining physi-

cian, are entitled to little weight, and standing alone do not constitute substantial evidence." *Id.* at 280 (citing *Spencer ex rel. Spencer v. Heckler,* 765 F.2d 1090, 1094 (11th Cir.1985). The court is satisfied that the ALJ's determination to disregard the opinions of the consultative examiners and decision to rely upon the records and opinions of treating physicians is based upon substantial evidence.[1] As previously stated, the court cannot reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Secretary, it can only determine whether the Secretary's decision is reasonable and supported by substantial evidence. The court is convinced that the Secretary's decision was so based.

The ALJ reviewed the plaintiff's subjective complaints of pain and found that such complaints are not supported by the record as a whole and are not credible. (Tr. 23). The court is satisfied that the ALJ's determination is reasonable and based upon substantial evidence. In order for a Social Security claimant to demonstrate that pain serves as a severe impairment, there must be;

1) evidence of an underlying medical condition, and either;

2) objective medical evidence that confirms the severity of the alleged pain arising from that condition; or

3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Brown v. Sullivan,* 921 F.2d 1233, 1235–36 (11th Cir.1987). Plaintiff contends that the ALJ did not properly apply this pain standard and that his decision is due to be reversed. The court disagrees, and is satisfied that this standard was correctly applied by the ALJ. The ALJ noted that plaintiff does suffer from a severe impairment involving the right lower extremity, but that the objective medical evidence does not support the severity of pain complained of by the plaintiff. The ALJ remarked that the medical

---

1. The court agrees with the Secretary's determination that the ALJ's disregarding such examinations is irrelevant since the ALJ limited plaintiff to sedentary work. Plaintiff argues that the examinations are relevant because they indicate that plaintiff cannot work a full eight hour day. However, as indicated above, the consultative examinations standing alone do not constitute substantial evidence.

evidence reveals no mention of pain or swelling in the ankles, no mention of sleep difficulty due to pain, no evidence of pain in the hips, and no complaint of swelling since the date that plaintiff's disability ceased, August 1, 1991. The ALJ further observed that plaintiff takes no medication for his "severe" pain during the day. Although plaintiff stated that medication for pain upsets his stomach, there is no medical evidence that plaintiff ever made such a complaint to a physician or that any medication with reduced side effects was ever prescribed or requested. The ALJ reached the conclusion that the objective medical evidence does not confirm the severity of the alleged pain, and the court is satisfied that proper legal standards were applied and that such a finding was based upon substantial evidence.

In summary, the court concludes that the ALJ's determination that plaintiff is no longer disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Secretary's final decision is therefore due to be affirmed, and a separate order in accordance with the memorandum of decision will be entered.