[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10771

Non-Argument Calendar

————————————————

JOSEPH DAVIS,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:22-cv-81728-WM

————————————————

Before LAGOA, KIDD, and WILSON, Circuit Judges.

PER CURIAM:

Joseph Davis appeals the district court's order affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for disability insurance benefits ("DIB"). After careful review, we affirm.

## I. BACKGROUND

### A. Davis's Application and Relevant Medical Evidence

In October 2020, Davis applied for DIB, asserting the following disabilities: (1) low vision, (2) back injury, (3) difficulty standing for long periods, and (4) difficulty sitting for long periods. Davis had previously worked as a sales representative for Old Castle Retail—a company that sourced mortar, concrete, mulch, and patio stones to home improvement chains—and, because of his disabilities, he had to stop working on the alleged onset date of February 23, 2019.

As relevant to our analysis on appeal, medical records revealed that Davis injured his back in January 2017 while lifting an object at work and first sought medical treatment from an orthopedic specialist in April of that year. Davis described his back pain as sharp, burning, and radiating down his legs, and indicated that his symptoms worsened with sitting, prolonged standing, walking, lifting, bending, and twisting. A March 2017 MRI showed that Davis had a disc protrusion, a disc bulge, and joint arthropathy. Davis

received multiple lumbar epidural steroid injections, but reported limited relief from the treatment and with rest, ice, and physical therapy. He also underwent a radiofrequency ablation/rhizotomy in May 2018, but indicated no improvement from this procedure.

During general examinations, Dr. Mark Rogovin reported that Davis had normal neurologic and psychological functions as well as a normal spine and full range of motion. Of note, during a December 2017 visit, Dr. Rogovin indicated that Davis walked between two to three miles several times a week "without adverse incident" and requested authorization to return to work. Davis likewise indicated during October and November 2020 visits that he "walk[ed] a cou[]ple of miles daily with his dog with no adverse [symptoms]."

Davis also began seeing Dr. Gary Richman during this time. At a February 2020 visit, Davis reported that his recent injections significantly improved his symptoms, but the pain ultimately returned. Similarly, in April 2020, Davis described his pain as a seven out of ten and explained that it gradually returned two months after receiving lumbar medial branch blocks and radiofrequency rhizotomies. At that time, Dr. Richman completed a Florida Workers' Compensation Uniform Medical Treatment/Status Reporting Form, restricting Davis to no climbing, pulling, or pushing, and limiting him to lifting ten pounds above his waist or head. However, Dr. Richman did not provide any standing, sitting, or walking restrictions.

In June 2020, Dr. Richman completed another workers' compensation form, which similarly restricted Davis from climbing, pulling, or pushing, and lifting 20 pounds or more over his waist, but gave no standing, sitting, or walking restrictions. In January 2021, Dr. Richman reported that Davis reached maximum medical improvement on June 19, 2020, and he was restricted to lifting no more than 20 pounds. Dr. Richman also later recommended further epidural steroid injections, but Davis's "extreme" anxiety required sedation. While Davis was seeing Dr. Richman, he also underwent an electromyography ("EMG") nerve conduction velocity test in May 2021 with a separate neurologist, which indicated chronic spine irritation in some areas.

Then, in June 2021, Dr. Richman completed a "Physical Residual Functional Capacity Questionnaire," at the request of Davis's counsel. He reported that Davis's bilateral lower back pain, which radiated down his legs, occasionally interfered with the attention and concentration needed to perform simple work tasks, and, during an eight-hour workday, Davis could stand or walk and sit for only about two hours. Dr. Richman explained that Davis must walk 15 minutes every hour, and required a job that allowed him to shift positions at will and permitted 2 unscheduled 15-to-20-minute breaks during an 8-hour workday. Dr. Richman also indicated that Davis could occasionally lift 10 to 20 pounds and frequently lift less than 10 pounds, but he limited Davis to occasional stooping and climbing stairs and to rarely twisting, crouching, and climbing ladders.

Davis's DIB claim was denied initially, and, in August 2021, Dr. Carlos Cordero, a state agency evaluator, reviewed Davis's records as part of a disability determination explanation for denying his claim on reconsideration. Dr. Cordero stated that Davis's alleged impairments could reasonably be expected to produce his reported pain, but indicated that Davis could occasionally lift 20 pounds, frequently lift 10 pounds, and, in a normal 8-hour workday, could stand or walk and sit with normal breaks for about 6 hours. Dr. Cordero limited Davis to occasionally stooping and climbing ladders, ropes, and scaffolds, but concluded these limitations would not prevent Davis from completing his past work as generally performed.

Thereafter, in October 2021, Davis had another visit with Dr. Richman. Davis reported tenderness and palpitation, that his pain interfered with his daily activities, and that his recent steroid injections only temporarily improved his pain. Therefore, Dr. Richman prescribed an anti-inflammatory drug for pain management.

### B. Testimony before the ALJ

After his claim was denied initially and on reconsideration, Davis was granted a hearing before an ALJ, which was held in January 2022. At the telephonic hearing, both Davis and an independent vocational expert testified.

Davis explained that he drove approximately three times a week for about an hour and a half, usually to the grocery store or doctor appointments. His previous job ordinarily required

considerable walking and lifting items ranging from 50 to 94 pounds. When he hurt his back in January 2017, he was placed on "light duty," which entailed traveling to stores to complete administrative matters and working for only two days a week for a total of about ten hours. However, he stopped working in February 2019, and he reached a workers' compensation settlement with his employer in 2021.

At the time of the hearing, Davis could not walk on hard surfaces, but tried to walk a mile on a soft surface every day, which took about 45 minutes, including 2 breaks. Davis estimated that, in an eight-hour day, he could stand between one-and-a-half-to-two hours and spend two hours sitting in a straight-back chair, but he would have to rest for about three hours because his pain was relieved only when lying down. He took a daily two-hour nap and would wake up throughout the night because he could sleep only on his side without pain. Davis was also unable to kneel down and stand back up, bend at the waist, or pick up an object off the ground. He estimated, however, that he could lift a ten-pound object off a table.

Davis further explained that his pain originated in his lower back and radiated to his buttocks, hips, and down his legs, and that Dr. Richman had given him lifting restrictions and prescribed a muscle relaxant. Davis noted that he could grocery shop for short periods, and he tried to help his wife with cooking at home, but shopping for too long hurt his back. Davis also stated that he had

considered surgery but did not want to proceed with this course of action because he was told that it could worsen his condition.

The vocational expert, Heidi Feder, explained that work as a sales representative was classified as light, but Davis performed his job at a heavy exertional level, consistent with how the role would be performed with hardware supplies. Based on hypotheticals posed to her, she believed someone like Davis who could perform a full range of light work in an eight-hour day with certain limitations "would only be able to perform the past work . . . as it [wa]s classified." She further concluded that someone who could lift only ten pounds and would be restricted to sitting, standing, and walking for around two hours would be unable to perform his past work, or any comparable work, as he could not make it through a full workday.

### C. The ALJ's Written Decision

In February 2022, the ALJ issued her final decision, and after walking through the Social Security Administration's five-step sequential evaluation process, concluded that Davis was not disabled. As to steps one and two, the ALJ found that Davis had not engaged in substantial gainful activity since the alleged onset date, and his back disorder was a severe impairment that significantly limited his ability to perform basic work activities. The ALJ noted Davis's other alleged impairments, including low vision, but concluded they were non-severe, and the record did not establish that these conditions limited Davis's ability to perform basic work-related functions.

As to step three, the ALJ determined that Davis's back injury did not meet the severity of any of those listed in 20 C.F.R. Part 404, Appendix 1. Before turning to step four, the ALJ concluded that Davis had the residual functional capacity ("RFC") to perform light work with limitations to occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes, and scaffolds. The ALJ noted that Davis testified that he had difficulty walking, sitting, standing, sleeping, and lifting items more than ten pounds, which "could reasonably be expected to cause [his] alleged symptoms," but his "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the" record evidence.

The ALJ found that the medical records indicated that: (1) Davis reported injuring his back in January 2017 and experiencing pain since the alleged onset date; (2) Davis continued lightly working two years after his injury; (3) the March 2017 MRI showed multiple injuries; (4) the May 2021 EMG showed chronic irritation of the spine; (5) the physical examinations showed some instances of a mildly decreased range of motion and tenderness but several normal functions; and (6) Davis's treatment had been generally conservative. The ALJ noted that Davis testified that he could not walk more than 1 mile and it took him 45 minutes to do so, but in December 2020, Dr. Rogovin indicated that Davis walked his dog a couple of miles daily without issue. The ALJ also cited Davis's testimony that he could drive for short distances, shop in stores, and help his wife prepare meals.

The ALJ also discussed her consideration of Dr. Cordero's opinion, which indicated that Davis could complete "a range of light work with limited postural maneuvers," and "the multiple opinions of treating source Dr. Richman, all which state[d] [Davis] [wa]s capable of lifting no more than 20 pounds from the floor to overhead." The ALJ found these opinions persuasive because the physical examination records supported the findings, and they were consistent with Davis's reports of his daily activities.

The ALJ then explained that she found Dr. Richman's June 2021 opinion regarding Davis's inability to concentrate unpersuasive because it was "not consistent" with prior "unremarkable" mental examinations, and Davis's testimony did not reference any cognitive limitations. The ALJ also found that Dr. Richman's opinion about Davis's abilities was "overstated and incomplete," as Dr. Richman indicated that Davis could stand, walk, and sit for around only two hours daily, but did not state what Davis could do for the remainder of the day. The ALJ also explained that Dr. Richman's June 2021 opinion contradicted his previous reports that did not provide any standing or walking limitations and was inconsistent with Davis's reports of physical activity to other medical providers. The ALJ thus concluded that Dr. Richman's June 2021 opinion was based on Davis's reports of pain rather than objective evidence.

The ALJ noted that Davis's wife also submitted a report summarizing her husband's symptoms, but the ALJ discounted this evidence because Davis's wife was not medically trained and her statements about the extent of her husband's pain were

inconsistent with the record. Therefore, the ALJ concluded that Davis could work as a sales representative as generally performed and was not disabled. The Appeals Council denied Davis's request for further review.

## D. District Court Proceedings

In November 2022, Davis filed a complaint for judicial review in the district court. The parties consented to a magistrate judge handling the proceedings under 28 U.S.C. § 636(c), and both Davis and the Commissioner moved for summary judgment. In January 2024, the magistrate judge entered an order affirming the Commissioner's decision to deny Davis's DIB application, thereby granting the Commissioner's motion for summary judgment and denying Davis's motion. The magistrate judge entered judgment in favor of the Commissioner, and this appeal followed.

## II. STANDARD OF REVIEW

"When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision." *Samuels v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1045 (11th Cir. 2020) (quotation marks omitted). We review Social Security cases to "determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). However, we review *de novo* the legal principles the Commissioner applied.

*Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024), *cert. denied sub nom. Raper v. O'Malley*, No. 24-206 (U.S. Dec. 16, 2024).

### III. DISCUSSION

To receive DIB, a claimant must prove he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled." *Winschel*, 631 F.3d at 1178. Relevant here is step four, which asks whether, based on an RFC assessment, "the claimant can perform any of his or her past relevant work despite the impairment." *Id.*

A claimant's RFC "is the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ "determine[s] a claimant's RFC by considering all relevant medical and other evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). "Evidence includes (1) statements from medical sources and (2) descriptions and observations from the claimant and the claimant's family, neighbors, friends, or other persons." *Raper*, 89 F.4th at 1273 (quotation marks omitted). "Based on that evidence, the ALJ determines what classification of jobs the claimant can perform." *Id.*

#### A. *The ALJ properly reviewed the medical opinions of record*

Davis argues that the ALJ wrongfully considered Dr. Cordero's and Dr. Richman's medical opinions jointly. He further contends that the ALJ's decision overlooked the fact that Dr. Cordero's opinion was based on an incomplete record and not grounded in his own observations, impermissibly used the terms

"consistency" and "supportability" interchangeably, and lacked sufficient rationale to support her conclusions. Davis also argues that, in rejecting Dr. Richman's June 2021 opinion, the ALJ only made consistency findings and failed to reconcile all of the record evidence with her ultimate finding.

For claims filed on or after March 27, 2017, a medical opinion "is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in the following abilities . . . ." 20 C.F.R. § 404.1513(a)(2). An ALJ must consider any submitted medical opinion or prior administrative medical finding using five enumerated factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(a), (c). Because the "most important" factors for evaluating the persuasiveness of a medical opinion are supportability and consistency, the ALJ must explain how she considered those two factors. *Id.* § 404.1520c(b)(2).

"Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). "Consistency," in turn, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive

the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. An ALJ also may not improperly substitute her judgment of the claimant's condition for that of the medical and vocational experts. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

Here, the ALJ properly assessed the record medical opinions. As an initial matter, the ALJ did group her discussion of Dr. Richmond and Dr. Cordero's opinions into a single paragraph, but the regulations at issue describe a procedure for analyzing multiple opinions from one physician, not one conclusion from multiple physicians. *See* 20 C.F.R. § 404.1520c(b)(1) (providing that, when one medical provider gives multiple opinions or findings, an ALJ will articulate how she considered those opinions in a single analysis).

Regardless of any challenges to the organization of the written decision, the ALJ applied the proper standards and sufficiently explained the weight she afforded each medical opinion. *See* 20 C.F.R. § 404.1520c(b)(2); *Winschel*, 631 F.3d at 1179. Although the ALJ might not have been explicit with her use of the relevant terms, her analysis clearly articulated a consideration of both supportability and consistency. *See* 20 C.F.R. § 404.1520c(c)(1), (2); *Raper*, 89 F.4th at 1276 n.14 ("[T]here are no magic words to state with particularity the weight given medical opinions or the reasons

discounting them. What matters is whether the ALJ states with at least some measure of clarity the grounds for his or her decision." (quotation marks and brackets omitted)).

The ALJ reasonably found persuasive Dr. Cordero's opinion that Davis's limitations would not prohibit him from performing his past position as generally performed, as she explained this finding was supported by the physical evaluations completed by Dr. Richman, Davis's treating physician, throughout his treatment. 20 C.F.R. § 404.1520c(c)(1); *see Raper*, 89 F.4th at 1275–76 (explaining that "it is proper to read the ALJ's decision as a whole, and" in certain circumstances, "it would be a needless formality to have the ALJ repeat substantially similar factual analyses"). The ALJ specifically explained that Dr. Cordero's opinion was consistent with Dr. Richman's reports of Davis's treatment plan for his back pain and progress after treatments. 20 C.F.R. § 404.1520c(c)(2).

The ALJ also reasonably concluded that Dr. Richman's June 2021 opinion was unpersuasive, because, as she explained, the opinion was, "overstated," "incomplete," and inconsistent with his previous evaluations of Davis's physical condition indicating he could work with modified duties. *Id.* The ALJ directly contrasted Dr. Richman's June 2021 opinion with his June 2020 evaluation and standard workers' compensation form, which did not provide any standing, sitting, or walking restrictions.

The ALJ also separately stated that Dr. Richman's opinion that Davis could not concentrate due to his pain was "not consistent" with the medical records indicating normal cognitive

function and Davis's own testimony that did not mention any trouble concentrating. 20 C.F.R. § 404.1520c(b)(2), (c)(1), (c)(2). The ALJ's analysis thus explicitly contrasted Dr. Richman's June 2021 opinion with previous medical opinions and Davis's own description of his pain and capabilities.

Accordingly, because the ALJ properly assessed the supportability and consistency of the record medical opinions, and substantial evidence supports the weight given to each opinion, we affirm as to this issue.

### B. The ALJ did not erroneously analyze Davis's alleged symptoms and limitations

Davis also argues that the ALJ erred when analyzing his subjective pain and limitations, as she did not follow the proper legal analysis and failed to consider several elements of the record. He contends that the ALJ addressed only whether the objective evidence confirmed the severity of his pain but did not consider whether it reasonably related to his allegations or explain how his allegations were inconsistent with the medical records showing abnormal findings. Davis also argues that the ALJ's findings were not reasonable based on the substantial evidence showing that his medical condition had not been remedied by years of treatment.

We apply a two-part "pain standard" when a claimant attempts to establish disability through his testimony of pain or other subjective symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). To meet the pain standard, the claimant must provide "(1) evidence of an underlying medical condition; and (2) either

(a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Id.* This standard "also applies to complaints of subjective conditions other than pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." *Id.*

When evaluating a claimant's subjective symptoms, the ALJ must consider such things as (1) the claimant's daily activities; (2) the nature and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms. 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ did not err when analyzing Davis's alleged symptoms and limitations. The ALJ explicitly cited and described in detail Davis's testimony about his pain, walking and standing restrictions, and need for breaks. *See Wilson*, 284 F.3d at 1225. However, the ALJ recognized that Davis's characterization of the intensity and effects of his pain were inconsistent with Dr. Richman's reports of improvement for weeks or months at a time from treatment, and that he could work with certain restrictions. *See id.* ("If the ALJ discredits subjective testimony, [s]he must articulate explicit and adequate reasons for doing so."). Additionally, Davis's alleged limitations were contradicted by his own testimony that he

could walk about a mile at his own pace, drive himself, and assist with household chores. *See id.*

Further, substantial evidence supports the ALJ's conclusions that Davis could perform light work and that his allegations were inconsistent with his conservative treatment. Davis's condition did not require surgery and he reported at least temporary pain relief from the injections and less-invasive treatment he received. Davis could also stand and walk in a modified capacity, considering he performed light duty work for two years following his injury, could walk a mile at his own pace, had the ability to drive himself, and could assist with shopping and cooking. Additionally, although Davis testified that he could not sit or stand for extended periods, Davis received multiple reports of normal back examinations, and, as we have noted, he completed many daily activities without adverse symptoms.

Accordingly, we find that the ALJ properly assessed Davis's alleged symptoms and limitations when concluding that he had the RFC to perform light work. As such, we affirm as to this issue.

## IV. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment upholding the Commissioner's denial of Davis's DIB application.