[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————

No. 24-11710

Non-Argument Calendar

————————————

ERIC P. HERNANDEZ,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:22-cv-01343-RDP

————————————

Before ROSENBAUM, GRANT, and KIDD, Circuit Judges.

PER CURIAM:

Eric Hernandez appeals the district court's order affirming the Commissioner of the Social Security Administration's denial of his application for disability insurance benefits. He argues that substantial evidence does not support the Administrative Law Judge's ("ALJ") finding that two medical opinions, which stated that Hernandez could not interact with coworkers and supervisors, were unpersuasive. After careful review, we affirm.

## I.

Hernandez applied for disability insurance benefits in August 2020, alleging that he had become disabled on April 16, 2017. He previously worked as a roofer, a work-crew driver, a delivery driver, and a shift manager. Hernandez claims that he has a history of conflict at work and that he left or was fired from several jobs because of his inability to get along with others.

Following a hearing, an ALJ issued a written decision in March 2022 denying the application. Due to a prior application Hernandez filed in December 2018, as well as the insured status requirements of the Social Security Act, the ALJ limited the decision to the period from January 19, 2019, the date after the earlier determination, through December 31, 2020, the "date last insured." Hernandez does not dispute these findings.

The ALJ found that Hernandez suffered from a combination of severe physical and mental impairments, including, as relevant here, anxiety disorder, depression, and bipolar disorder. The ALJ determined that these conditions caused a "marked" limitation—that is, "a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis"—in Hernandez's ability to interact with others, including supervisors. Nonetheless, the ALJ concluded that Hernandez had the "residual functional capacity" ("RFC") to perform medium work with certain limitations, including that "he can work alone, which is defined as: no interaction with the public, only incidental contact with coworkers and no tandem tasks, and occasional interaction with supervisors."

In reaching that conclusion, the ALJ considered the medical evidence of record and medical opinions from various sources, including state agency consultants and two sources put forward by Hernandez: (1) Dave Harvey, a licensed clinical social worker who provided mental-health counseling to Hernandez at Quality of Life Health Services; and (2) Dr. June Nichols, a consulting psychologist who conducted a one-time examination of Hernandez and reviewed his records.

In a medical health source statement dated October 18, 2021, Harvey reported that Hernandez could not maintain attention, perform activities within a schedule, sustain an ordinary routine without supervision, adjust routine, or interact with supervisors or coworkers, and that he was unable "to be gainfully

employed in any capacity." Dr. Nichols completed a similar statement, finding that Hernandez could not maintain attention for at least two hours, perform activities within a schedule, sustain an ordinary routine without supervision, adjust routines, interact with supervisors or co-workers, or maintain socially appropriate behavior. In the ALJ's view, the opinions were not persuasive because they were not supported by the treatment records and were inconsistent with other evidence in the record.

Based on the ALJ's RFC finding and the testimony of a vocational expert, the ALJ concluded that there was work in the national economy that Hernandez could perform. Accordingly, the ALJ found Hernandez was not disabled and denied the claim. The Appeals Council denied review. Hernandez then filed a complaint in federal court, but the district court affirmed the agency's decision. This appeal followed.

## II.

In Social Security appeals, when the ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the final agency decision. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021). Our review is limited to whether substantial evidence supports the ALJ's findings, and whether the correct legal standards were applied. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

Substantial evidence means "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d

1155, 1158 (11th Cir. 2004) (quotation marks omitted). The substantial-evidence threshold "is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). Under this deferential standard, we do not "decide the facts anew, reweigh the evidence, or substitute our judgment for" that of the agency. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quotation marks omitted). "We will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021).

An individual claiming disability benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The ALJ uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). This involves evaluating the severity of a claimant's impairments and determining whether they prevent him from working. *See* 20 C.F.R. § 404.1520(a)(4). At step four of this process, the ALJ must determine the claimant's RFC, which is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019); 20 C.F.R. § 404.1545(a)(1). In formulating the RFC, the ALJ must account for all relevant medical evidence and other evidence. *Buckwalter*, 5 F.4th at 1320.

To determine whether a claimant is disabled, the ALJ considers medical opinions from medical sources. 20 C.F.R.

§§ 404.1502(a)(1)–(2); 404.1513(a)(2). A medical opinion is a statement from a medical source about what a claimant can do despite his impairments and whether he has an impairment-related limitation. *Id.* § 404.1513(a)(2). An ALJ may not improperly substitute his judgment of the claimant's condition for that of the medical and vocational experts. *Freeman v. Schweiker*, 681 F.2d 727, 731 (11th Cir. 1982).

In evaluating the evidence, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative finding.[1] 20 C.F.R. § 404.1520c(a). Under the current regulations, the ALJ must determine the persuasiveness of medical opinions and prior

---

[1] Previously, ALJs were "instructed to defer to the medical opinions of a social security claimant's treating physicians" unless there was good cause not to do so. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). In 2017, though, the Commissioner eliminated the treating-physician rule for claims filed on or after March 27, 2017, like Hernandez's claim. *See id.* at 896–97. We held in *Harner* that the 2017 regulations abrogating the treating-physician rule were valid and that they governed claims filed after their effective date. *See id.* at 897–89.

Because the treating-physician rule does not apply here, Hernandez's reliance on *Simon v. Commissioner, Social Security Administration*, 7 F.th 1094 (11th Cir. 2021), is misplaced. In *Simon*, we applied the treating-physician rule because the claimant's application was filed in March 2015. *Id.* at 1104 & n.4; *see id.* at 1107 ("Before an ALJ may reject a treating physician's opinions as inconsistent with other medical findings in the record, he or she must identify a 'genuine' inconsistency."). We declined to address in *Simon* "how the new regulation bears on our precedents requiring an ALJ to give substantial and considerable weight to a treating physician's opinions absent good cause to do otherwise." *Id.* at 1104 n.4. *Harner* has now resolved that issue.

administrative medical findings by considering supportability, consistency, treatment relationship, specialization, and other factors. *Id.* § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors. *Id.* § 404.1520c(b)(2). The ALJ must articulate how he considered the supportability and consistency factors, but not the remaining factors. *Id.* As to supportability, the more relevant the objective medical evidence and explanations are to the medical opinions, the more persuasive the opinion is. *Id.* § 404.1520c(c)(1). As to consistency, the more consistent a medical opinion is with evidence from other sources, the more persuasive the opinion is. *Id.* § 404.1520c(c)(2).

"For [disability insurance benefits] claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). As we noted above, Hernandez's last insured date was December 31, 2020, so he was required to establish disability on or before that date.

### III.

Here, substantial evidence supports the ALJ's finding that Harvey's and Dr. Nichols's opinions were unpersuasive. There is no dispute that Hernandez's mental impairments substantially limit his ability to interact with others. The ALJ found that Hernandez had a "marked" limitation—that is, "a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis"—in his ability to interact with others. And as a result, the ALJ's RFC finding imposed a "work alone" limitation,

which the ALJ defined as "no interaction with the public, only incidental contact with coworkers and no tandem tasks, and occasional interaction with supervisors."

In Hernandez's view, though, the ALJ should have gone further and adopted the "no contact" limitations offered by Harvey and Dr. Nichols. But the ALJ reasonably rejected this more restrictive view of Hernandez's ability to interact with others. Substantial evidence supports the ALJ's finding that Harvey and Dr. Nichols's "no contact" opinions were not supported by their treatment records or consistent with other record evidence.

As the ALJ explained, while both Harvey and Dr. Nichols opined that Hernandez's limitations have existed since April 2017, the treatment records do not reflect relevant "evidence of treatment or reports of symptoms" until May 2020, other than one occasion in March 2017, when Hernandez reported some depressive symptoms.[2] So their opinions covering the period from April 2017 to May 2020 are largely unsupported by objective medical evidence. The medical source statements also failed to provide grounds for the limitations assessed by Harvey and Dr. Nichols. Despite indicating that Hernandez could not interact with coworkers or supervisors, neither Harvey nor Dr. Nichols explained this

---

[2] As Hernandez notes, the treatment records reflect that Hernandez received "secondary diagnoses" for anxiety and depression in April 2017, and a diagnosis of mild, recurrent major depressive disorder in November 2018. Beyond the diagnoses, however, the records offer no corroborating information and list no symptoms.

limitation or supported it by reference to clinical observations or medical records.

The ALJ also reasonably concluded that the treatment records starting in May 2020 did not fully support Hernandez's allegations of disabling symptoms, including a complete inability to work with others. Quality of Life treatment records reflect that Hernandez had reported depressed, anxious, irritable, and angry moods, among other symptoms. But as the ALJ stated, other examination findings showed that "he had normal perception, thought content, cognition, insight, and judgment, logical thought process, and clear speech." Similarly, Dr. Nichols reported that Hernandez had anxious mood and thought process and tearful and sad affect, but otherwise his mental-status examination was largely normal. And while Hernandez's wife reported that he does not get along well with authority figures and "can't handle being around a lot of people" because he "gets nervous and panics," she did not confirm Hernandez's claim that he had been fired or laid off because of problems getting along with other people.

The record clearly shows that Hernandez would have difficulty working with others. But we cannot say that the ALJ unreasonably assessed the severity of Hernandez's work-related limitation by finding he could "work alone" with no public interaction, only incidental coworker interaction, and occasional interaction with supervisors. Hernandez essentially asks that we reweigh the evidence and substitute our judgment for that of the agency, but we cannot do that. *See Mitchell*, 771 F.3d at 782. Because

substantial evidence supports the ALJ's decision, we must affirm. *See Buckwalter*, 5 F.4th at 1320.

  **AFFIRMED.**